In re BOTANY INDUSTRIES, INC., H. Daroff & Sons, Inc., Bankrupts.

Bankruptcy Nos. 72–273G, 72–274G.

United States Bankruptcy Court, E. D. Pennsylvania.

Feb. 5, 1982.

Sidney Chait, Adelman & Lavine, Philadelphia, Pa., for trustees.

Donald M. Collins, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., successor trustee.

Harry S. Sylk, Merion, Pa., successor trustee.

Richard M. Zinner, Friedman & Atherton, Boston, Mass., Sp. Counsel re litigation against The First National Bank of Boston.

Howard F. Cerny, New York City, for Botany Industries, Inc., H. Daroff & Sons, Inc. and Michael Daroff, objectors.

Wachtell, Lipton, Rosen & Katz, New York City, for the Creditors' Committee, Botany Industries, Inc.

Hahn, Hessen, Margolis & Ryan, New York City, Sklar, Pearl, Lichtenstein & Sklar, Lawrence J. Lichtenstein, Philadelphia, Pa., for Creditors' Committee, H. Daroff & Sons, Inc.

Harry Norman Ball, Philadelphia, Pa., for bankrupts, Botany Industries, Inc. and H. Daroff & Sons, Inc.

Stuart Savett, Kohn, Savett, Marion & Graf, Philadelphia, Pa., for Botany Industries, Inc.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The cases before us, which are being jointly administered, arise from objections made at the audit of the successor trustee's fifth and final account. The cases are almost ten years old and the issues raised by those objecting to the account having been raised and finally ruled upon heretofore, it should be crystal clear to any impartial observer that the principle of *res judicata* is applicable.

*Moore's Federal Practice* says it succinctly:

The term res judicata is often used to denote two things in respect to the effect of a valid final judgment: (1) that such a judgment, when rendered on the merits, is an absolute bar in a subsequent action, between the same parties or those in privity with them, upon the same claim or demand; and (2) that such a judgment constitutes an estoppel between the same parties or those in privity with them, as to matters that were necessarily litigated and determined although the claim or demand in the subsequent action is different.

1 B Moore's Federal Practice ¶ 0.405[1].

▇▇ All of the objections raised at the audit of the trustee's account meet the above qualifications: (1) the judgments were rendered on the merits, they were between the same parties or those in privity with them, and they were upon the same claim or demand; and (2) all of said judgments constitute an estoppel between the same parties or those in privity with them, as to matters that were necessarily litigated and determined although the claim or demand in the audit now before us is different.

Although there are 204 creditors in the case of Botany Industries, Inc. ("the Botany estate"), not a single one of them raised any objection at the audit. On the contrary, the creditors' committee of that estate voiced its approval of the trustee's account and the other issues which were being considered. Although there were 453 creditors of the estate of H. Daroff & Sons, Inc., ("the Daroff estate"), not a single one of them (except Michael Daroff) raised an objection. The creditors' committee, on the other hand, was represented at the audit by its chairman who voiced the committee's complete approval of the trustee's account and the other applications presented at the audit. Michael Daroff, as we have stated,

objected, although technically he has no position to object. He filed a claim (No. 157) but it was disallowed years ago, so he is not even a creditor. The Botany estate, the Daroff estate and Michael Daroff were all represented by one lawyer and his objections to the trustee's account were a redundant declaration of accusations these objectors made years ago, which objections were tried years ago and which were adjudicated years ago.

As we must, let us examine the trustee's account, analyze the objections, determine whether the objectors are raising new issues or merely a reiteration of old accusations (which have previously been tried and adjudicated) and, in short, determine whether there is one iota of substance to these repetitious objections.

With the exception of the $200,000.00 in new money received by the trustee in compromise of his suit against the First National Bank of Boston, almost the entire balance of the receipts set forth in the trustee's fifth and final account consists of interest earned on the trustee's certificates of deposits. Hence it is crystal clear that the objections are filed in a vain effort to retry issues which were finally adjudicated years ago and are therefore *res judicata*.

For example, the objectors allege that the sale (*in 1974*) of the corporate stock of Baltimore Luggage Company, Inc., a wholly owned subsidiary of the Botany estate, was improper. They alleged that eight years ago in an effort to prevent the approval of that sale by the bankruptcy court. We dismissed the objection by an opinion and order dated July 25, 1975: See *In re Botany Industries, Inc.*, 9 C.B.C. 653. That order not having been appealed, is final and *res judicata*. Now, in 1982, the objectors seek to relitigate the exact same issue.

In that case (as in the cases of the others later discussed) the objectors were either the Botany estate, the Daroff estate or Michael Daroff, acting individually. The objections raised at the current audit, unearthing the same issues adjudicated seven and a half years ago, are by an attorney representing all three objectors. Hence,

the qualification that the previously rendered judgment, in order to be *res judicata*, must have been "between the same parties or those in privity with them," is fully met. The Botany estate, the Daroff estate, and Michael Daroff are like three peas in a legal pod,—each in privity with the others, seeking individually and collectively to litigate and relitigate each issue *ad infinitum, ad nauseum.*

We think the United States Supreme Court put it clearly, when it said:

The general rule of res judicata applies to repititious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that, when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose... The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment.

*Com'r v. Sunnen* (1948) 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898.

This fundamental principle of law applies to the sale of the Baltimore stock, *supra*, the sale of the stock of Glenoit Mills (*infra*), the sale of the Botany trademarks (*infra*) and the compromise of the suit against The First National Bank of Boston (*infra*).

For another example the objectors contend that the sale of the corporate stock of Glenoit Mills, Inc., (likewise in *1974*) another wholly owned subsidiary of the Botany estate was improper. After hearing all the facts we filed an opinion and order on October 7, 1974, confirming the sale. Michael Daroff promptly appealed and, on December 2, 1974, District Judge John Morgan Davis dismissed the appeal. Unconvinced,

on December 31, 1974, Michael Daroff appealed to the Court of Appeals for the Third Circuit. On February 13, 1975, that court dismissed the appeal: 511 F.2d 1392. That order is final and *res judicata*. Now, seven years later, the objectors seek to retry that case.

In *1976* (almost six years ago) these same objectors sought the removal of the then trustee, Max Robb, now deceased. Included among their reasons for urging his removal, the objectors charged the trustee, *inter alia*, with misconduct in the sales of the corporate stock of Baltimore Luggage Company, Inc., and Glenoit Mills, Inc. (the self-same charges which comprise the present objections and which were decided in 1974). On July 13, 1976, after hearing all the testimony, we filed an opinion and order, dismissing all of the objectors' accusations. Unconvinced, they appealed and, on June 23, 1978, District Judge Louis C. Bechtle affirmed our order and dismissed the appeal. This, we suggest, made our ruling on the objections final and the issues *res judicata*.

Once again, the objectors also protest "the sale of the Botany trademarks, trade-names and certain other assets to Rapid-American Corporation and its Division, Joseph H. Cohen & Sons." We entered an order on November 28, 1973, (over eight years ago) approving and authorizing that sale. No appeal was taken from that order. Hence that eight year old order is final and *res judicata*.

The objectors further contend that "the (trustee's) action against The First National Bank of Boston was not timely commenced and was improperly settled for an inadequate amount." This settlement, of course, followed a full hearing and was approved pursuant to an opinion and order entered by this court on July 14, 1980. Michael Daroff endeavored to appeal, but the appeal was untimely filed and was dismissed by the District Court in an opinion by Judge John Morgan Davis. Because the dismissal of the appeal by the District Court was predicated on its untimely filing, the objectors argue that the issue is not *res judicata* (citing some New York state cases). What

the objectors overlook are the specific provisions of Section 39(c) of the Bankruptcy Act:

A person aggrieved by an order of a (bankruptcy judge) may, within ten days after the entry thereof or within such extended time as the court upon petition filed within such ten day period may for cause shown allow, file with the (bankruptcy judge) a petition for review of such order by a judge and serve a copy of such petition upon the adverse parties who are represented at the hearing. Such petition shall set forth the order complained of and the alleged errors in respect thereto. Unless the person aggrieved shall petition for review of such order within such ten-day period, or any extension thereof, the order of the *(bankruptcy judge) shall become final.*

Bankruptcy Statute of 1898, as amended; Section 39(c). (Emphasis supplied.)

■ The doctrine of res judicata is not a technical rule, but a rule of fundamental repose for both society and litigants. Its salutory principle is founded upon the recognized public policy that there must be some end to litigation and that when one appears in court to present his case, is fully heard, and the contested issue is decided against him, he may not later renew the litigation: *Heiser v. Woodruff* (1946) 327 U.S. 726, 66 S.Ct. 853, 90 L.Ed. 970. This doctrine prevents an encore and "reflects the refusal of law to tolerate needless litigation": *Angel v. Bullington* (1947) 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832.

We are impelled to repeat what we said in our opinion of July 13, 1976, in *In re Botany Industries,* 9 C.B.C. 653:

. . . One would normally suppose that the issues raised and argued before and adjudicated by the lesser and appellate tribunals would be forever laid to rest. But not so. Once again, Botany and Michael Daroff have exhumed these same charges and seek to breathe new life into the legal carcass. We think it is well put by the Court of Appeals for the Seventh Circuit in the matter of *Woodmar Realty Company,* 294 F.2d 785. As here, that

was a case in which the bankrupt sought to remove a trustee, resurrecting charges previously adjudicated by the bankruptcy court, the district court and the appellate court. Said the Court of Appeals (at page 792), "There is a limit to the period of years over which the same dead horse may be beaten." Verily, say we. The issue of fraud was pleaded, argued and adjudicated in connection with the sales of the Baltimore and Glenoit capital stocks. It was pleaded, argued and adjudicated in connection with the Bankrupt's efforts to transfer the Chapter XI proceeding to a Chapter X reorganization case. Just as all good things must end so must bad things. It is done, finished and ended. It is beyond artificial legal respiration. We have a name for such a passing; it is the legal counterpart of "Rest in Peace", and is called *res judicata*.

The fifth and final accounts of Harry S. Sylk (as the trustee who succeeded Max Robb, deceased) and Donald M. Collins, Esquire (as the trustee who succeeded Harry S. Sylk upon his resignation) show the following:

| | |
|---|---|
| Receipts from 6–1–79 to 4–30–81 | $4,675,185.42 |
| Disbursements in same period | 2,907,778.52 |
| | $1,767,406.90 |

(The above receipts include the balance on hand of $3,987,333.88 as shown in the trustee's Fourth and Partial Account.) Since we find the foregoing to be complete and accurate, we are entering a separate order, which is attached to the account, confirming it.

The trustees have filed a joint application for statutory commissions (not previously requested or allowed) for the services which they rendered over a period of six years. These commissions, which are calculated in strict accordance with Sections 48(c)(1) and 48(d) of the Bankruptcy Act, are as follows:

| | |
|---|---|
| To Donald M. Collins, Esquire | $68,200.00 |
| To Harry S. Sylk | $55,800.00 |

We are of the opinion that these requests are fair and reasonable and, since they are in accord with the permissive amounts approved by the Bankruptcy Act, we are entering a separate order allowing the requested commissions.

Adelman and Lavine, Esquires, who are experts in the field of bankruptcy law, have filed a voluminous application for compensation for the 5087.4 hours of legal services rendered to the several trustees extending over a period from October 1973 to May 1981. The requested fee is to include the necessary legal services until the estate will be closed. They have already received an interim allowance of $300,000.00 and request additional compensation of $358,-716.00 and reimbursement of costs aggregating $1,544.61. Their application conforms with all of the requirements set forth in the leading cases in this circuit: *In re Hardwick & Magee*, 355 F.Supp. 58 (E.D. Pa.); *In re Meade Land & Development Co., Inc.* (CA3) 537 F.2d 280. Representatives of both creditors' committees have stated their respective approvals of the amounts requested and we agree. Their services are well worth the amount requested. Accordingly, we will enter a separate order allowing the requested fees and costs.

Friedman & Atherton, Esquires, who were engaged as special counsel to the respective trustees to prosecute the claims of the Daroff estate against The First National Bank of Boston in the United States District Court for the District of Massachusetts, (which resulted in the compromise settlement of $200,000.00, *supra*) seek a counsel fee of $28,057.50 and a refund of costs totalling $2,648.31. Their services, performed over 505.70 hours, commenced on November 11, 1975, and extended until June 14, 1980, when we approved the foregoing settlement. Having already been awarded interim compensation of $27,-000.00, they request a balance of fee of $28,057.50 and a refund of $2,648.31 for expended costs. We conceive their services to have been well performed and the results which they accomplished excellent. Accordingly, we will enter an order awarding them their requested fees and costs.